Good morning, Your Honors. I'm Donald Searles on behalf of the defendant Julio Almazan-Becerra. This appeal presents a familiar question to the Court, namely whether a prior conviction under California Health and Safety Code Section 11360 or 11379 can constitute a prior aggravated felony conviction for purposes of sentencing enhancements under the Illegal Reentry Sentencing Guideline under Section 2L1.2 of the Guidelines. Now, the Court has repeatedly found in the past that both of those California statutes are overbroad in the sense that they encompass conduct that is in addition to what is recognized as an aggravated felony conviction for purposes of the sentencing guidelines. Now, the District Court here recognized that and therefore recognized that it could not simply rely on the language of the statute itself, the so-called categorical approach by which the Court could determine whether this is a prior aggravated felony, and instead look to the prior plea allocution of the defendant. There are two prior convictions here, one in 1995 for a violation of 11360 and then another in 1998 for a violation of Now, the way the Court approached this issue, and I would direct the Court's attention or the panel's attention to the excerpts of record at page 178, and as the Court stated, and this is the trial court below, with respect to the 1995 conviction. Now, it's in front of the Court on this situation that I'm not going to go into the details of the trial court. I'm not going to look at the police report. Is this your excerpt or the subject? Yes, Your Honor. This is the appellant's excerpts of record. Your excerpt is what page? At page 178. Okay. Thank you. Is this the colloquy? No. This is the district court's rationale below in deciding to impose the 16-level enhancement. I'd like to first address the court's the trial court's analysis of this situation and then bring the panel's attention to the actual plea allocution upon which the Court was referring. Is there a number? My bait stamp didn't come through. Is there another number on this? It's at the hearing you're talking about, though, right? Yeah. The sentencing hearing at page 6. Okay. Thank you. Which was held on ---- When I said colloquy, I understand. On January 14th of 2005. Yeah. I apologize that the bait stamp didn't come through. No, no. That's fine. So as the Court said at that time at the sentencing, now it's in front of the Court on this situation, and I'm not going to look at the police report. But looking at the plea itself, the plea is, admits everything that was charged in the indictment. The charge in the indictment is an offer of sale, a sale, or a transportation of marijuana. So I pled guilty to all of these, and all of them apply. So if the factual basis for an offer to sell is by the plea itself and by the plea colloquy where the judge actually told him that he is pleading to transportation an offer to sale, there are pleas to all of these. Now, the Court, in deciding that the defendant, at his plea colloquy, pled guilty to all of these is, in fact, directly contradicted by the plea allocution in 1995. And ultimately, this appeal involves the prosaic question of whether or means all. And we submit that it does not. The excerpt of record, again, at page 125 is the 1995 plea allocation, which is at page 10 of that transcript, in the event the Court doesn't have a bait stamp for that, for a plea that occurred on January 30th of 1995. And the language cannot be more explicit that this was in the disjunctive in the alternative. It was not. He pled guilty to all of these. So as the Court stated in taking the 1995 plea, the Court, sir, in all of that, what is your plea to count one, that allegedly on or about January 2nd, 1995, that you violated health and safety code section 11360, charged as a felony, that is, you did either transport or sell or offer to sell marijuana, charged as a felony. Is your plea guilty or not guilty, guilty or no contest, the defendant guilty. And then he goes on to plead to count two, which is, again, absolutely clearly in the disjunctive either or. So the Court's determination after rejecting the police reports and then determining that the defendant had pled guilty to all three of these offenses, all three manners, is simply not supported by the record. Then with respect to the 1998 conviction, which is a conviction under 11379, 11360 relates to offenses dealing with marijuana. 11379 relates to offenses dealing with other drugs. The government concedes, well, first, the district court departed downward from the 16-level enhancement that it found appropriate for the 1995 conviction. Down to the otherwise appropriate guideline offense based on the 1998 conviction, which is a 12-level enhancement because of the sentence being imposed on the 1998 conviction was less than 13 months, so there was a 12-level enhancement. So the court departs downward to that 12-level enhancement based on its finding that the 1998 conviction is also an aggravated felony. Well, the plea colloquy with respect to the 1998 conviction, which is set out at Excerpt of Record 142 of our excerpts of record, absolutely unequivocally established that the defendant pled guilty to an offense of transportation, not to sale, which this court has previously recognized as not an aggravated felony. And I believe counsel for the government can correct me if I'm wrong when she has an opportunity to speak, but the government concedes that there should not have been any enhancement, 12-level enhancement for that offense. I think isn't your argument, at least you raise it in your reply brief, that there is an implicit concurrence in that by the failure of government to respond in its chief brief against your opening brief? Yes, Your Honor. There's a concession made when you don't respond. Yes, Your Honor. I believe that. Page 3 of your gray brief, and you still hold that position. Yes, Your Honor. I don't believe there will be a dispute with respect to the government's concession on that point. I recognize that. If we just take the 1998 conviction, leaving aside the 1995 conviction, what is the net effect of that in terms of the sentence if we just, if we remove the 1998 conviction? You've explained it to me in guidelines terms, but in years, perhaps I didn't. Well, it was a four-level departure. He was sentenced at a, initially, well, it's a 70-month sentence that was ultimately imposed. What the, otherwise, if there were no enhancements, either the 16 or the 12, he'd be looking at an offense level of 8. Given his criminal history category, my client is a homeless individual who has a number of petty offenses, a methamphetamine addict who lives by a railroad track and has a long criminal history of petty offenses. So, I don't know exactly where, at a level 8, what it would result in. Yeah, even. I think it would be a significant reduction. Okay, thanks. And one that would perhaps repatriate him to his native country sooner than he otherwise would be. The only issue that I see with respect to the 12-level enhancement is that the court departed downward to that level. And ordinarily, the court's jurisprudence is that the extent of a downward departure is not reviewable. But since the guidelines have been ruled advisory, this court has stated several times, and I brought the court's attention to at least two recent cases in my 28-J letter, that if the court incorrectly calculates the guidelines, it is as if the court has not properly consulted the guidelines, which still remains a requirement, notwithstanding the fact that the guidelines are advisory. So here, with respect to the extent of the downward departure, even though it may not be reviewable, the court incorrectly calculated his otherwise applicable offense level based on his 1998 conviction. And I think it's fair to say that the court viewed that as an appropriate step as to or a floor as to how far it should go. And I think had the court recognized that that conviction, as the government concedes, should not have been the basis for a 12-level enhancement, it could have gone further. And ultimately, we're dealing with a homeless, illegal alien who is currently spending six years at the federal hotel, I think it would be more appropriate to repatriate him. There was no objection to the downward departure by either side? No, the argument was really about the 16-level enhancement, which is fully preserved below. Now, I was provided with a 20HA letter recently by the government with respect to their arguments as to the appropriateness of the district court's decision-making with respect to the 1995 conviction. And Ms. Velliere provided me with a citation to a recent Ninth Circuit case that's in her 20HA letter. Guerrero-Velasquez. Judge Bybee's decision. I'm sorry, Your Honor. I just read it this morning. I don't know the author of the opinion. Suggesting that the charging language of the 1995 instrument can be looked to as a basis for imposing the enhancement. Now, here we have a plea allocution that I think takes precedence. And this court has stated in Martinez that it takes precedence over any contrary language in a charging instrument. So I don't think the government's reliance on Guerrero-Velasquez goes very far. But even if you do look at that charging instrument, it is charged as the plea is allocated in the alternative. Yeah. And so it really does not get very far. The – and then the other aspect is the police report, which the district court did not rely on, but the government is now urging this court to rely on as a basis for finding this enhancement. And I think the reason the district court did not rely on the police report is that immediately after, in the 1995 plea allocation, at our excerpt of Record 125, after it establishes very clearly that it's in the alternative either or, the court then asks whether counsel stipulate that the police report and other documents contain a factual basis for the plea. Well, again, it relieves this ambiguity. There's a factual basis for an either or plea. And so I don't think the police report really serves the government's purpose. And I think it's the reason the district court did not rely on it. And with that, Your Honor, I see I have a minute and 40 seconds, which I'll save for rebuttal. You may. Thank you for your argument. We'll hear from the government at this time. Good morning. May it please the Court. Barbara Valliere on behalf of the United States. I'd like to start with what the parties do agree on. The parties do agree and the government does concede that the 11379 conviction in 1998 was not a basis for an enhancement above a four-level enhancement under the guidelines. In other words, the district court did allude to, during the sentencing hearing, an enhancement of 12 levels based on that particular conviction. But any reading of the record, and I would agree with this, any reading of the record would establish that at the time of the plea in 1998, the government had amended the indictment to charge in transportation as opposed to a possession with the intent to distribute or a possession, excuse me, a sale, and therefore the defendant pled guilty to the amended indictment, which was a transportation which would not qualify for a 12-level enhancement. So the government concedes that we need to, because it makes a difference that we would need in regardless of what happens with a 1995 conviction, we need to vacate the sentence and remain free since. No, I don't agree, Your Honor. In 1990, well, actually, no, because here the district court had enhanced the sentence up to 16 based on the 1995 conviction. So therefore, if the court affirms the district court's determination that the 1995 conviction was properly an enhancement, then there's no need to remand because the error with respect to any alleged error with respect to the 1998 conviction would be harmless. Well, that's why I was asking the question to your colleague, and he thinks it makes a difference. So we'll just have to pencil that out. I just don't, actually, Your Honor, even under the court's most recent cases in Cantrell and with regard to proper calculation of the guidelines, the court did properly calculate the guidelines here and determined that the 16-point enhancement under the 1995 conviction applied and then departed downward four levels. The government's position actually is and did object to answer Judge Wallace's question, did object below that the four-level departure was unnecessary but did not cross appeal on those grounds. So therefore, the only thing that's before the court is a determination as to whether or not the 1995 conviction qualified for the 16-level enhancement. And it's our position that under De Novo's standard review, which is what the court has here, that the record amply demonstrates that the judicially noticeable documents established here that he did indeed plead guilty to an offer and a — an offer to sell and a sale of marijuana in 1995. And I say that for several reasons. First, as the district court did, it looked at the original charging document, which in this particular case not only identified the elements of the particular offense, both in counts one and two, but it also went on to make specific factual allegations, which in this particular case was that the defendant did offer to sell and sell marijuana. The defendant in — at the plea colloquy pleaded guilty to counts one and two of the indictment. Although the district court — The counts one and two of the indictment were in the disjunctive. That's all he pled to. The factual allegations, Your Honor, were not in the disjunctive. They were actually in the conjunctive. And he pled — Wait a minute. Tell me what the indictment was, the charge that he actually pled guilty to. The charge, as it was read — Was in the disjunctive. Well, it was actually, Your Honor, it was not in the disjunctive, as I recall. I believe it was listed as being in the conjunctive. The district court read it as in the conjunctive. In the disjunctive, when he was asked to plead guilty, it was read to him in the disjunctive. That's correct, Your Honor. I plead guilty to that. He said he pled guilty to counts one and two. Our point is slightly different to that than that point, Your Honor. The point is, under this case, this Court's decisions in Williams and Rodriguez, that a plea to the charging document, which in this particular case was counts one and two, is a plea to the factual allegations in the charging document. In this particular case, the factual allegations in the document, as it's clear on page record site 90, which is the indictment, stated that he — Yeah, okay. On 90, counts one and two specify that it was committed by Mr. Ramirez, which was his alias in this case, who — Your excerpt, are you — I'm in his excerpt, Your Honor. The excerpt, yes. 90? That's correct. Okay. The count, both counts one and two, specify that Mr. Ramirez, who did sell and offered to sell a controlled substance, marijuana, he pled guilty to the — Slow down. Slow down. Sorry, Your Honor. I'm reading here, and it says, or. Right here in the indent part, it says, transport or sell, or offer to sell marijuana. Yes, Your Honor. And if you go on and you read the factual allegations in the count on the last sentence, was committed by Mr. Ramirez, and then the court — and then the indictment specifies the facts, which are — which did sell and offer to sell a controlled substance. But where do you get that language? Is it here that he's pleading guilty to? Well, he pled guilty to both counts, Your Honor. He pled guilty to count one and to count two of the indictment. And the factual allegations in the count, unamended. The difference between the 1998 count and the 1995 count is the fact that the counts was amended later to change the charge. Here, there was nothing amended about the count that the defendant pled guilty to. I'm reading. I'm looking right where you're looking. Count one, count two are both in the disjunctive. Well, the — the portion above is in the disjunctive, Your Honor. What I'm pointing to is actually the last sentence, the specification of the facts, who did sell. What line are you reading? The fourth line down on — They're numbered over at the side. Actually, Your Honor, I think you're reading the — I'm reading the indictment in this case. I don't know if you're reading the transcript of the plea colloquy or the indictment. I'm reading from page 90 of the excerpts, the one you directed me to. Well, Your Honor, what I have here is two different — well, maybe perhaps I misdirected you, but what I have as excerpts on page 90 is the copy of the indictment. It's also — Your Honor, it's actually specified as well in our brief how the count reads. But even if the Court were to disagree with me about this particular point, about whether or not the defendant in pleading guilty to counts one and two of the indictment, which included the factual allegation of sell and offer to sell, there are other judicially noticeable facts here, I think, that establish that the defendant pled guilty to a sale of marijuana. Well, you agree, I take it, that when he actually pled guilty, the Court read to him in the disjunctive — Yes. — in both one and two. The Court read counts one and two. That's what he said, I'm guilty of. He said guilty to what the Court read of counts in one. But the Court did not read the entire count. The Court only read the beginning portion of the count. Right. It didn't read the factual allegation. That's what he says, I'm guilty of. That's true. But there — How can — how can that be expanded into something that was not read to him that is in exactly the opposite, in the conjunctive instead of the disjunctive? The difference between — well, Your Honor, there are other judicially noticeable facts in this record and documents which establish that at the time of the plea, which is the most important thing for purposes, I think, of Sheppard and this Court's consideration, that he was pleading guilty to a sale, in addition to the plea that the specific plea at the time when he said he was guilty to counts one and two, he also — the district — the defense counsel at that time had indicated to the Court that what they were talking about here was sales. In fact, he corrected the Court at one point when the Court started talking about transportation. And I'm looking at page — and I'm hoping I'm on the same excerpt of the record as you are, Your Honor. I'm looking at page, I believe it's 126 of the record. Of the excerpt? Yes. I mean, there was a point at which the district court was — Okay. I'm at 126. At the bottom of 124, actually, Your Honor, the court had — was indicating — Where is it? Excuse me. At the top of 124, Mr. Reese corrected the Court. Mr. Reese was the defense counsel and indicated that they were just sales that they were talking about in this particular case. It was in the context of the Court reading him his — the consequences of his plea had, in fact, he — with regard to his driving privileges. It's not in 124 of the — I think we have different excerpts, Your Honor. I have an excerpt of record from — from defense counsel. Are you an appellant's expert? Yes. I'm defense counsel's excerpt of record. Okay. All right. In addition to that — Well, that doesn't — you know, Hernandez only goes so far. I agree with you, Your Honor. It only goes so far. I don't think it covers this. Do you? I mean, do you really seriously think it covers this spontaneous utterance that — Not only, Your Honor, with respect to the entire — if you look at the entire record here. What you're looking at is a — two counts in the indictment which specified facts that said sale and offer to sell. You're looking at a plea colloquy in which defense counsel corrects the Court and says that we're only talking about sales. And then, lastly, you're looking at the fact that the stipulated basis of fact in this case were the police reports. In fact, defense counsel stipulated that the police reports were the part of the factual basis for the plea. And with respect to that, there's no real dispute that all the police reports which the government put in in the — before the district court here, although the district court did not rely on them, that the — How do I get there? Well, the stipulation itself, Your Honor, gets you there. I mean, as the — The district court said — the Federal district court said, I'm not going to consider the police reports. It's a de novo standard of review, Your Honor. De novo standard of view means that looking at the entire record, whether or not there were judicially noticeable facts. Under this Court's decision in Hernandez-Hernandez, a stipulated set of facts — in that case, it was a 995 motion — Right. — was more than enough to get you to the place where you needed to be, which is that the defendant had admitted the facts that were contained within that document. I think that part of the problem here is that — What you're saying is that saves what the district court did. But the district court clearly thought this was conjunctive. Yes, Your Honor. And I think that the — and I think for good reason — They did not rely on the police report or anything else. That's correct, Your Honor. And — but I actually agree that the district court properly considered that the defendant pled guilty to the two counts and that the two counts included a factual allegation which was including sale. Yes. But that's trying to save it. When Judge Jensen looked at it, he said it was in the conjunctive. He pled guilty to each one of them. And I think that he did, Your Honor. He pled guilty to each one of them. I understand that. But that wasn't — Judge Jensen made a mistake. But you're saying it's okay, it's harmless error because they stipulated the police report and there was a correction made by counsel? Actually, Your Honor, I think that the de novo review of the record establishes that there was more than sufficient judicially noticeable documents for the court — for this court to conclude and for the district court to conclude that the 1995 conviction under 11-390 was, in fact, for a sale and an offer to sell marijuana, which more than justifies the enhancement of 16 points. And I — and I'd like to make this last point, if I may. The — there is some discussion that Shepard somehow categorically sets aside police reports as being considered at this time for purposes of determining whether or not what the factual basis is for a plea. What all Shepard does is what this Court had previously done in other cases, which is say that documents cannot be judicially noticeable. In other words, if they're unmoored from the plea colloquy. Here, the defendant and defense counsel specifically relied upon the documents in the record, the police reports, as the factual basis for that plea. And those police reports make out only one set of facts, and that's a — that's essentially that he was guilty of selling marijuana. On this entire record, under de novo review, it's our position that there's more than enough evidence for the court to conclude that this was a qualifiable conviction and that the 16-point enhancement was properly accounted to the defendant, and therefore, the sentence should be affirmed. What you're saying is if we set aside completely what the defendant pled to, the disjunctive, that we could still affirm? I don't think that — again, it's our position he didn't plead. He pled to the two counts of the indictment. Let's assume for the sake of argument that we conclude that he pled guilty to what was read to him, disjunctive. Just assume that. That's correct. I understand your argument. If we take that position, you say we can still affirm? Yes. Even though he pled guilty to the disjunctive, we can go ahead and find some other reasons to say that he pled guilty to specific — You can find on these — on this record, Your Honor, on the judicially noticeable facts that he pled guilty to an offense which qualifies because the factual basis Well, and to do that, we have to — I'm sorry. To do — I'm sorry to interrupt. To do that, we have to rely on what counsel said and nothing the defendant said. That's correct, Your Honor. And there's, of course, case law which establishes that the counsel may — and we cited in our brief, and it's cited in the Hernandez case, that counsel's stipulation binds the defendant. And that, as well, Your Honor, is not inconsistent with what the court, Supreme Court, has to look at for purposes of the qualifying offenses to that — the facts that the defendant assented or confirmed. And here, the defendant assented. I'm sorry, Your Honor. I was just going to ask, in your closest case to allowing us to go beyond what the defendant on the record agreed to plead guilty, is your closest case is which? Well, Your Honor, I think our best case is probably Hernandez-Hernandez. But, again, I — and perhaps I haven't been as clear as I should have been, but I don't think that the court has to go beyond what the defendant pledged to because I think the defendant pledged to the facts that were in counts 1 and 2 of the indictment, which included a sale of marijuana. I understand your argument. Thank you, Your Honor. Thank you, counsel. Rebuttal. I think this type of argument that we're having here today about trying to interpret what happened in 1995 and what the judicial records may or may not show or what the defendant may or may not have admitted to is precisely the type of judicial inquiry that should be foreclosed by Shepard. What Shepard prescribes is judicially noticeable facts. Do we have an unequivocal charging instrument? Do we have an unequivocal plea? Is there an unequivocal stipulation? And there is nothing unequivocal about what happened in 1995. As far as this conviction is concerned, counsel says that the defendant, although he pled guilty in a disjunctive, is bound also by his counsel's stipulation to the police report, which shows, in fact, he did — he did sell the drug. Well, the stipulation is not the stipulation to the accuracy of the police report. The stipulation itself, I think, needs to be paid careful attention to. This question put to counsel was not, is the police report accurate in all respects? It's just simply, is the — does the police report — do counsel stipulate the police report and other documents contain a factual basis for the plea? And the plea was in the disjunctive. So the police report could provide a factual basis for sale or offer of sale or transportation. We don't know exactly what counsel stipulated to. And I think it's because of that ambiguity, Judge Genshin below did not rely on it. What do you do with the — with the correction that counsel makes of the judge to indicate that we're talking about a sale? Well, I don't know where that appears in the transcript, Your Honor. I was — I didn't see it either, but — I was briefly looking, and I did not see any such clarifying statement by counsel that we're just talking about a — a sale. It's an 11-page, a 12-page transcript. I'd urge the panel to carefully pay attention to it. I've read it just a few minutes here and could not find such a stipulation or statement. We'll look. Finally, with respect to the standard of review and inviting the Court for de novo review, I think the standard of review with respect to the applicability of one of these 16-level enhancements, these very strong enhancements under the Guidelines, is the record below must unequivocally — or the language in different panel opinions speaks of it needing to be either clear and convincing or unequivocal. And I think if the Court applies that standard of review rather than some de novo standard that you can look through all of the trial court's records in 1995, I hope the Court will come to the conclusion that the record here does not establish an unequivocal basis for the imposition of this enhancement. Thank you very much. I thank both sides for the argument. Very well-argued case. The case just argued will be submitted for decision. The Court's going to stand in recess for about 10 minutes, at which time we will pick up with the Anderson case and then proceed through the balance of the calendar. We'll be back.
judges: Wallace, Hawkins, Thomas